The, I guess I will refer to this as Partridge 3, and one of the interesting things about the procedural history of this case is that Partridge 1, we had what was a 12B6, but I argued and I think the court found that it was really a MSJ masquerading as a 12B6. Partridge 2 was an MSJ, which did not meet the standards of an MSJ, and now we're here with Partridge 3 where we have a JMOL masquerading as an MSJ, and based on Heller. And Heller itself says, which is a per curiam as everybody knows, the theory under which jury instructions are given by trial courts and reviewed on appeal is that juries act in accordance with the instructions given them. They are not to consider or base their decisions on legal questions with respect to which they are not charged. And then the next sentence I think was interesting, we think that the court of appeals searched for ambiguity in the verdict that was unavailable. And that you could substitute district court for court of appeals. If you take a look at what the jury was charged with, the jury instructions, they were all stand-alones. They were stand-alones as to Mr. Ellison, they were stand-alones as to Chief Lane, they were stand-alones as to the City of Benton. All of these were cabined, if you will, for each individual. We then had the verdict forms. And the verdict forms, verdict number three, which was a finding for defendant, then in the note says, if you find in favor of Ellison, have the foreperson sign and date this verdict form, proceed to the next verdict form. If you find in favor of the plaintiffs, complete the following paragraph. They did exactly, the jury did exactly what they were instructed to do. Then, when the jury came back, and the jury had found for the defense on one, two, and three, and against, and for the plaintiffs on four, five, six, and seven, at, and I believe it's in the transcript of 1201-1206, the judge specifically asked, hey, remember, city, you submitted a special instruction. Do you want me to give that special instruction, they actually submitted two, to the jury? He said, to the defense. The defense said no. We said no. And the jury was discharged, and the very first thing that the city said was, we want a JMOL based on Heller. Well, it's astonishing to me that they now want to cite to you a litany of MSJ cases when a JMOL has a distinctly different pattern and different standard. The standard is deference. The standard is harmonized. Clearly here, the jury instructions were, as to the individual officer, whether it was excessive force, whether it was self-defense. If you take a look at the jury instructions, you take a look at the verdict forms, for the city and for Lane, it is a deprivation of a constitutional right, of Keegan's constitutional right. The jury did exactly what they were supposed to do. The jury sat through the evidence. They heard the evidence of this, for lack of a better term, the keystone cops, when they got there, of what happened in this case, the tragedy of what happened in this case. The jury heard also from Lt. Fuller, and they just mentioned in all of their briefing, just in kind of a factual recitation, Lt. Fuller is almost an afterthought. And of course, Lt. Fuller is almost an afterthought, because Lt. Fuller did not tag, if you will, the three officers who were, who actually, and Ellison, who actually did the shooting, what Detective Fuller did, and I asked him the question, what would you have done, if you were in Ellison's spot, and you saw a youth, a young man, who was obviously in mental distress, had a problem. What would you have done? And he said, I would have talked to him like a human. So just, what was the constitutional right that was violated? How do you describe that? The constitutional right is exactly what the verdict form says on 4, 5, 6, and 7, which is the failure to train, the failure to investigate. Ellison had 12 separate incidents in the five years prior, 12, a dirty dozen of incidents, involving killing people, killing dogs, shooting himself, and the constitutional deprivation was that he had what he considered the right to do. Basically, everything I've done is fine. In fact, when the investigator, they put the investigator on the stand, the jury heard from him. I asked him, did you know, ten months before this shooting, or eight months before this shooting, that he had gotten into it with a minor, that he didn't like the minor's attitude, and they ended up actually wrestling to the ground. Do you agree that the jury necessarily found that Officer Ellison acted reasonably? No, I don't believe they did, and that's precisely why, when asked at 1201 to 1206, do you want the special interrogatory, they didn't ask for it. They were deathly afraid of that. Counsel, what, if anything, was the jury instructed regarding the need for an underlying constitutional violation before they could find liability on the part of the city and Lane under Monell? Absolutely nothing. And was there any objection raised as to that lack of instruction? No. In fact, the instructions were submitted, were filed, if you will, I believe on February 5th of 2024. The entire pack of the proffered instructions, I believe that's what Judge Miller called them, he said to the city, please file your package of proffered instructions. We agreed. We had a vigorous, for lack of a better term, I was there in real time, so it's not reflected in the record, but I will tell you it was a robust discussion of what we were trying. And it's a great question, because if the jury had been instructed, if we had a special verdict, I would have argued that. The jury, and that's what returns us back to Heller. We're not here to try, as the district court did at the urging of the city, to try to search for ambiguity here. They didn't ask for a special verdict. In fact, when they were asked about a special interrogatory, as I mentioned, they didn't want it. There was never a, the jury was never given the chance to say, hey, you have to find first a constitutional violation. In fact, if you take a look at the instructions, the instructions for Ellison don't even talk about a constitutional violation. Only as to Kirk Lane, only as to the city do they talk about a constitutional violation. But the reasonableness instruction, that is the constitutional standard. Would you agree with that? I mean, the objectively reasonable officer is the constitutional standard, and the jury was instructed to make that finding. I would agree with that as to Ellison. I would not agree this idea that somehow the kind of separation of church and state, so to speak, when you've got the municipality. The Spear case, obviously, out of this circuit, clearly says there may be a circumstance where you can find that an individual was not liable, but the city, the municipality, the supervisory was. And we've got the Spear case, we've got the, I always mispronounce it, the Propratic case, and you've got the other series of cases. So on the failure to train and the investigation allegations that the jury found for your client, how would you, I mean, what amendment does that, I mean, what constitutional claim is that? It's, I mean, where do we ground that? I understand that you're saying it's the failure to train and other things, but, you know, tell me what kind of constitutional claim is that? Where's the constitutional hook in that? It would be a Fourth Amendment. So it's an excessive force claim? Well, it would be, it's beyond just excessive force. In this sentence, you have a, you clearly have an excessive force in terms of him being killed. Well, there's force. It's not clearly excessive. The question, the excessive question goes to reasonableness. And here we have a jury verdict that looks to me like, at least by implication, says the conduct of Officer Ellison was reasonable. Well, except they were never asked that directly to say... Well, they were in the second, in the jury instructions, weren't they? Right. In the jury instruction, they are told, is it excessive force? I have that. But the question is, how do we get that out? Then what we have done is we have cabined, so to speak, or we have separated, or we've conflated and turned this JMOL into an MSJ, if you will, or we have tried to search for a special verdict to have applied when, in fact, it was a general. So we tried the case based on what we were given, what we knew to be the facts. Clearly, if the jury believed that somebody was not adequately trained, didn't adequately investigate the dozen instances prior to that of excessive force, and he had the mindset that he was out there stumbling around, there was no plan, that their only trained crisis negotiator, Lieutenant Fuller, specifically said that he would have done something different. He was the only one who had the training or the investigative experience to have assessed this situation. The constitutional violation is this kind of continencing the actions of an officer, of a rogue officer, and the rogue officer was let out there. The officer was found not liable, right? Correct. Under excessive force. That is what the jury was directly told to do. The jury was not asked, by the way, don't go farther. The jury was told, if you find for the officer, then go to the fourth jury instruction. I have three minutes left, which I would love to reserve for rebuttal. You may, of course. Proceed. Thank you. Ms. Adams. Thank you, your honors. May it please the court. My name is Jenna Adams, and I represent the city of Benton, and former chief Kirk Lane, in this case. The only constitutional violation that was tried to the jury was the Fourth Amendment excessive force claim. The jury unanimously found that Officer Ellison did not use excessive force. There simply can be no supervisory or municipal liability if there is no underlying constitutional violation on the part of Officer Ellison. Does the jury instruction tell them to continue even after they're done with Ellison? It does. So, do we have inconsistent directions from the beginning, and inconsistent verdicts in this case? I would say, yes, the verdicts are inconsistent and they can't be harmonized, and under Rigel v. Pine Bluff, the correct thing to do here would be vacate the verdict under the judgment as a matter of law, which is what we requested. But no one objected at trial at the time the jury was right there, correct? No. So, we filed a motion to bifurcate prior to the trial, where we asked the court to not proceed on the city claims, because we obviously had a little bit of a forethought there. Unfortunately, that was denied. Then again, at trial, we did proffer jury instructions for the city. We also proffered special jury instructions as to the city and Chief Lane as well, and those were not permitted to go forward. The jury instruction that we said no, or the special verdict form that we said no to that Mr. Geragos mentioned, was specifically one question with regard to Officer Ellison, which we felt wasn't necessary at the time, given the fact that they had returned a verdict in his favor. What was that question? Don't quote me on this, but it was something to the effect of, did Keegan point the gun at the officers, or in the direction of the officers? I can't remember the specific language. That was the one jury special interrogatory. Counsel, back to my question. Before the jury was discharged, no one said this verdict is inconsistent, right? Pickley, you, the city, didn't say this is inconsistent verdicts. We did after the jury had been dismissed. Not while the jury was still there, right? Does that affect anything? No, it does not. It doesn't hum. In some state practice, it does. It does not. You decided to go for judgment as a matter of law instead, right? Well, we titled it as a judgment as a matter of law, or in the alternative, a motion to alter the judgment. It was both a 50B and a 59E motion. Counsel, we have to try to determine whether we can harmonize the two verdicts. Given the great deference that this court gives to jury verdicts, are we compelled to reach the conclusion that the jury found deliberate indifference on the part of the defendants that they did find liable? No. In fact, this court has on three separate occasions in cases that recited in both sets of briefs that you can vacate a verdict against a city in this exact scenario. Those cases are Ridgell v. Pine Bluff, Clay v. Conley, and Tilson v. Forest City Police Department. In each of those cases, in Tilson v. Forest City, that was a jury verdict where they found that the officer was not liable for arresting without probable cause and questioning without an attorney. They found the city and the chief liable, however, for a failure to act to prevent Tilson from continued unlawful incarceration. The city filed a judgment as a matter of law, which was denied, and then they appealed to the Eighth Circuit. The Eighth Circuit ultimately reversed, finding that the district court erred by not granting the judgment as a matter of law because in that case, there was not legally sufficient evidence present at trial to hold the chief and the city liable. In Clay v. Conley, again, it was a jury verdict where they found that the officer was not liable individually for a lack of probable cause for the arrest. However, they found the officer liable officially for supervisory liability. They appealed it to the Eighth Circuit, and the Eighth Circuit held that there was probable cause for the arrest, and that because there was probable cause for the arrest, that was dispositive on the issue of supervisory liability. Again, in Rigel v. Pine Bluff, in that case, it was a jury verdict where they found in favor of the mayor, but against the city. That was a $24,800 jury verdict against the city. City filed a judgment as a matter of law, which was denied, so they appealed to the Eighth Circuit. At the Eighth Circuit, they said, where a plaintiff seeks damages based on alleged illegal actions of a municipal official, there's no authority to award damages against the municipality when the jury concludes that the official committed no wrong. They ultimately reversed and vacated the judgment against the city. That's three separate times that we have cited in our briefs cases in this exact scenario. Again, the only constitutional claim that went to the jury in this case was the Fourth Amendment excessive force claim. The failure to train and the failure to investigate prior accusations of excessive force are not stand-alone claims. They are completely dependent on that Fourth Amendment excessive force claim, and they are tethered to it. There are numerous Eighth Circuit cases that stand for this proposition. In the appendix 1378 to 1397, we've provided a table of various Eighth Circuit cases, certainly not exhaustive, as well as our Rule 28J letter that we provided to the court. The Eighth Circuit cases specifically address and stand for the proposition that Chief Lane, because appellants have argued that Chief Lane was the individual that can hold the city liable. However, there are numerous Eighth Circuit cases that stand for the proposition that Chief Lane cannot be held liable individually on a supervisory claim if there's no underlying constitutional violation on the part of his subordinate. Those cases are Rowe v. Humphrey, Doe v. Aberdeen School District, Morris v. Craddock, Reynolds v. Little Rock, and Malone v. Hinman. What about the Green case? You've seen their 28J. Yeah, so Green is, I mean it stands for the proposition that, sorry I'm trying to find my notes on that one. That stands for the proposition that, well in that case they found that the use of force was objectively reasonable, and then they hold that absent a constitutional violation by the city employee, there can't be a Monell liability. So that one falls in line with our arguments that we're making here today. Appellants bring up Spear v. Winn. As we discussed in our brief, that case is distinguishable. It doesn't stand for the proposition that the chief and the city can be held liable when Ellison was not. The Eighth Circuit in that case, it was a 14th Amendment procedural due process claim, it was regarding a name clearing hearing. And the court in that case speaks in terms of hypotheticals. That basically there could be situations that arise where the combined actions of multiple officials may give rise to a constitutional violation. Specifically in that case they were talking about one official could have released some defamatory remark to the media, whereas the city council didn't provide the name clearing hearing, and together that's what caused the constitutional violation. We don't have that here. We have one constitutional Fourth Amendment excessive force claim. We have one person who did that, that's Officer Ellison. Nobody else can be held liable under the Fourth Amendment. And the theories of failure to train and failure to investigate prior accusations of excessive force are dependent on that claim. And because they found that Officer Ellison did not use excessive force, that is dispositive of the supervisory and the municipal liability claims. You agree there was an error in the instructions to the jury, that they should have stopped then after the first one if they found a violation. That's an error, right? To let it go ahead? Sure. The jury instructions certainly could have been more clear. We go by error and no error. Some errors don't count, some errors do. Don't you think that's an error if it says go ahead and do something else? Well, that's the purpose of a 50B motion is the judge then can correct legal, this is a legal question. Whether or not a city and a supervisor can be liable is a legal question. I would agree that, yeah, should there have been something in there? Sure. But they've not raised that issue on appeal that any of the jury instructions were in any way confusing. True. No one objected. I get it. No one objected. So unfortunately, we're here on the pure legal question whether the city and the supervisor can be held liable, and they cannot. If the court doesn't have any other questions on the no underlying constitutional violation issue, I'll turn to kind of our second arguments that we have made with regard to there not being legally sufficient evidence to find a failure to train or a failure to investigate prior accusations of excessive force. So for each of those claims, for the failure to investigate, appellants had to show that Ellison previously engaged in similar misconduct, that the city or lane failed to investigate or punish said conduct, and that the failure to investigate is what caused Keegan's constitutional violation. However, all of the evidence that was presented at trial, there was no evidence of any prior accusations of excessive force. Rather, they were these 12 use of force, prior uses of force by Officer Ellison. The evidence at trial was that all of those 12 uses of force were investigated, and all of them were found to be within policy, with the exception of one, which was the Clifford Jones shooting. The city had a policy that you can't shoot out of a moving vehicle. However, they found this was a special exception, given the fact that Officer Ellison and his partner were being shot at. So even though it was outside of policy, they found that it was a justified use of force. But all of those 12 prior uses of force were investigated. They had started with a supervisory review and went all the way up through the chain of command. In fact, out of the 12 prior uses of force, the jury only heard about three at trial, the Clifford Jones shooting and the two dog shootings. Previously, I said that it has to be engaged in similar misconduct. The law requires that it has to be similar misconduct that would have led to this constitutional violation. The only one that's remotely similar is the Clifford Jones shooting. The evidence that was presented at trial was that was obviously a good use of shooting. It was investigated. It was a good use of force. There simply was no evidence that, legally sufficient evidence that could have led to a jury finding on a failure to investigate. With regard to the failure to train... So you're saying, counsel, that perhaps a tendency to resort to use of force is not relevant to an excessive force claim? Correct. There has to be... They have to be similar to the incidents. The law requires that the city or the chief has to be deliberately indifferent to... They had knowledge of these prior uses of force and did nothing. The evidence was they investigated it. A couple of them had gone to the prosecutors and he had been cleared of any criminal wrongdoing. All of that, what came out during trial. For the failure to train, evidence at trial was that Officer Ellison had attended the Benton Police Academy. He had attended an orientation in the field training officer program, which was a 12-week program, either before or after the academy. The evidence at trial was that the Benton Police Department had met what the Arkansas state minimum standards requires, 16 hours annual training for law enforcement officers. Benton Police Department went above and beyond that state minimum standard, requiring 40 hours of its officers annually. Officer Ellison had testified at trial that he had training at the academy on police and people with disabilities, which encompassed dealing with people with mental illnesses. He also testified that he had significant on-the-job training with dealing with people with behavioral health or mental health issues. Thus, the evidence that was presented at trial was not legally sufficient in order to find the city and the chief liable on either one of those claims. Finally, Chief Kirk Lane is entitled to qualified immunity in his individual capacity. There simply is no case clearly establishing that a chief of police can be held liable on a failure to train or a failure to investigate prior accusations of excessive force when he was not directly involved in the alleged incident and the subordinates officer did not violate the Constitution. In fact, if it's clearly established, it's that he cannot be held liable under these circumstances. I've got a follow-up. Judge Gross asked you, and I want to be sure I understand, you do believe it's the duty of our court under SPHERE to try to reconcile the verdicts, right? Correct. Okay, thank you. And the only way to reconcile that is to affirm the vacating of the verdicts against the city and the chief. Legally and logically speaking, the chief and the city cannot have caused something that doesn't exist. They cannot be held liable for causing Ellison to act properly and lawfully. Therefore, we ask the court to affirm. Thank you. Thank you, counsel, for the argument. Mr. Geragos? Specifically, the defendant's proposed special interrogatory is page 44 of 45, document 159. That is the one that they submitted that they did not want the jury to have. And to answer your last question, under SPHERE, it's clear. SPHERE says, the appropriate question under moderating the individual government actors can be harmonized with a concomitant verdict or decision imposing liability on municipal entity. That's the law. Whether they want to make the argument that the jury verdict form was air, they never made that argument. That argument was never made. It was never objected to. Once again, I would say it's only air if there had been this idea of we asked for a special verdict and that's what we're going to argue to the jury. The jury did what the jury was instructed and the forms the jury was given and the judge specifically asked them. Judge Miller is not shy. In fact, Judge Benton, I think he gave you a shout out in the record as to he loves you to death but you have emotional law clerks. By the way, I've run into several of those emotional law clerks since Partridge 1 who now work at the Department of Justice. So you guys are doing something right. Judge Miller was not shy about it. The standard for JMOL is to harmonize. There is an easy way to harmonize that has been articulated by SPHERE. The idea that somehow they didn't know what was happening is frankly the record does not support it. They knew what a special interrogatory was. They filed on February 5th a special interrogatory before the jury came back. They could have just as easily said, hey judge, we want a special verdict form so that the special verdict form, I just tried a case where we wrestled for the special verdict form and that was what the jury was given. The jury does what the jury is instructed to do and a JMOL is not the time for them to now revisit Partridge 2 or Partridge 1 or rewrite the rules of civil procedure. Thank you and I will submit if there are no questions. Thank you. I thank counsel for their arguments. Case number 24-1780 is submitted for decision by the court.